# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X   Index No. 100516/2022
DANA ESCOFFIER,

        Plaintiff,

  -against-                                              COMPLAINT

WHOLE FOODS MARKET,
et al., A-Z

        Defendant.
------------------------------------------------------------X

        PLEASE TAKE NOTICE, that upon the annexed affidavit of Dana Escoffier, sworn to 26 day of April 2022, the plaintiff in the above styled caption, will move this Court, located at 60 Centre Street, New York, New York 10007, Room 130 on the 19th day of July, 2022 at 9:00 o'clock in the AM, or as soon thereafter as can be heard for an Order granting the plaintiff judgement for the relief sought herein, or in the alternative, a date for which a trial can commence

Dated: New York, New York
30 January 2022

                                                  Dana Escoffier
                                                  523 Hudson Street #4FS
                                                  New York, NY 10014
                                                  (212) 675-3836

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X     Index No. 100516/2022

DANA ESCOFFIER,

        Plaintiff,

-against-

WHOLE FOODS MARKET,
et al., A-Z

        Defendant.
-----------------------------------------------------------------X

**FILED**

MAY 16 2022

NEW YORK COUNTY
COUNTY CLERK

**SUMMONS**

Date Index Number Purchased

May 16th 2022

To: WHOLE FOODS MARKET, INC.
    et al., A –Z

PLEASE TAKE NOTICE THAT YOU ARE SUMMONED to answer the complaint of the plaintiff herein and to serve a copy of your answer on the plaintiff at the address indicated below within 20 days after service of this Summons (not counting the day of service itself), or within thirty (30) days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer a judgment will be entered against you by default for the relief demanded in the complaint.

Dated: New York, New York
      30 January 2022

                                Dana Escoffier
                                523 Hudson Street #4FS
                                New York, NY 10014
                                (212) 675-3836

To: WHOLE FOODS MARKET, INC.
    Harborside 3
    210 Hudson Street, Suite 700
    Jersey City, NJ 07311-1208

1

Venue: Plaintiff designates New York County as place of trial. The basis of this designation is: Plaintiff's residence in New York County and Defendant's business in New York County

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------X
DANA ESCOFFIER,

        Plaintiff,

-against-

WHOLE FOODS MARKET, et al., A-Z

        Defendant.
---------------------------------------------------------------X

Index No. 100516/2022

COMPLAINT/
AFFIDAVIT

State of New York   )
County of New York  ) ss:

    Dana Escoffier, having been duly sworn, depose and say:

The complaint of the plaintiff, Dana Escoffier, respectfully shows and alleges as follows:

1. The plaintiff herein, Dana Escoffier, is a resident of the State of New York whose residence appears below.

2. The defendant herein, Whole Foods Market, Inc. (hereinafter WFM) has a principal place of business located at 4 Union Square South, New York, NY. Defendant is engaged in the business of retail sale of food and food related items to the public.

3. Plaintiff Escoffier, a senior citizen of 76 years, entered the Whole Foods Market located at 4 Union Square South, New York., NY, to purchase food items on Saturday October 9, 2021 in the afternoon of said date.

4. Plaintiff approached a counter where prepared and packaged foods were displayed and had to wait to select items as an employee of WFM was blocking the area and who was engaged in a conversation with a woman who appeared to be a customer.

5. Plaintiff, after having waited at least about 25 seconds, said," Excuse me, please." and asked the WFM woman if she would allow plaintiff to select some items. The WFM employee moved out of the way, no longer blocking the counter.

6. After selecting food items, plaintiff moved away from the counter and noticed a large plastic shopping bag/sack seated in the pedestrian lane of the floor where there was back and forth customer traffic. The bag was unattended. The pedestrian lane, to accommodate shoppers coming and going, was narrow. Plaintiff waited for a clearance of customer traffic in order to proceed and continue to shop. When seeing an opportunity to pass the bag which remained unattended in the pedestrian lane, plaintiff guided his cart around the bag and noticed a customer was approaching. The plaintiff tried to accommodate the customer and himself in the limited space by adjusting his movement along with his shopping cart, and in so doing the left rear wheel of plaintiff's shopping cart brushed the outside edge of the unattended bag, ever so slightly, as plaintiff continued to move away.

7. Suddenly, the woman who had been conversing with the WFM employee turned and said something directed to plaintiff. Not hearing her very well, plaintiff said, "Excuse me, I didn't hear you". This same woman repeated herself, yet plaintiff still didn't hear her clearly and as a courtesy plaintiff approached the woman to hear her better and asked what she had said when, all of a sudden and without provocation, this woman slapped plaintiff directly in the face and stated, "You didn't say excuse me".

4

8. Plaintiff, stunned and very alarmed, the woman with visible angered facial expression, attempted to strike the plaintiff again. Plaintiff responded in self-defense mode, slapped irate woman before she could strike plaintiff again, in hopes of preventing any further assault to himself, all of which occurred within just seconds.

9. The woman then violently attacked the plaintiff, striking plaintiff in the face several times, causing lacerations to the plaintiff's face at the left side of plaintiff's face from the hairline of the plaintiff's forehead to the plaintiff's chin on the left side of his face and a second laceration on plaintiff's left side of his face from below the plaintiff's left eye to his chin, leaving two parallel lacerations. The plaintiff's face was scarred and blood was visible. The woman continued to attack the plaintiff violently, deranging plaintiff's right index finger, middle finger and ring finger causing a subluxation of plaintiff's three fingers; finger was deranged from a 'normal' 180 degrees position and causing great pain to plaintiff's hand; plaintiff's proximal phalangeal metacarpal joints/knuckles. Plaintiff's aforementioned fingers, at the proximal phalangeal metacarpal joints, were forced from their 'normal' alignment by the irate woman's strikes and blows. Plaintiff could feel pain in plaintiff's hand, but continued to attempt to protect himself; plaintiff had been attempting to cover his head and face to protect himself from the woman. Plaintiff's hands and wrist were also cut and small chunks of skin gauged out by the repeated assaults upon plaintiff by the irate woman who was clearly out of control and was not being restrained or controlled. Blows were struck repeatedly to plaintiff's head as he was assaulted. The female WFM employee was standing nearby and watched the assault, never attempting to try to stop it.

10. Plaintiff never struck the woman during this assault, but only tried to protect his head area with his arms and hands as he was being attacked. During the attack, the irate woman mumbled some hate speech inclusive of "You white mother...ker"[expletive].

11. WFM employees, after several seconds passed, grabbed the plaintiff and pushed plaintiff backward and away and held the plaintiff in place to restrict any potential movement by plaintiff, but not the irate woman who was only restrained afterwards.

12. The irate woman continued to flail her arms toward plaintiff and striking plaintiff as she was reaching over the WFM employee who was holding plaintiff. The woman, in irate tone, hollered, "You want a piece of me?" several times. The woman continued to attempt to strike plaintiff and it was only then that an WFM employee grabbed the woman to restrain her. It seemed the woman was licensed to behave in an out of control manner, as WFM employees stared as though being entertained by the event before restraining her.

13. After the irate woman was held, another WFM employee, wearing a gray shirt, grabbed the plaintiff violently and pushed plaintiff with force and hollered to plaintiff, "You can't come into my store and fight" and pushed the plaintiff again with great force. Plaintiff was not engaged in fighting, the WFM gray shirt employee made the assumption the plaintiff had been fighting. The plaintiff explained he had not been fighting, that the WFM gray shirt employee to have assumed this and conclude this was a wrong assumption and conclusion. The WFM gray shirt employee continued to push plaintiff, plaintiff asked why he was continually being assaulted by the WFM gray shirted employee. The WFM gray shirt employee stated, "Because you're moving around". The plaintiff's movement was limited to a radius of about two feet as plaintiff was looking for his mask, hat, glasses and watch. The plaintiff immediately realized he was wrongfully assumed to be the aggressor, in spite of

6

having explained that the woman had attacked the plaintiff without justification. The WFM gray shirt employee frowned at the plaintiff, with facial gesticulations demonstrating discontent and even anger with the plaintiff even giving the impression of contempt for the plaintiff.

14. Plaintiff was confined to a small area and was looking left, right, forward, backward to see if he could locate personal belongings that had been knocked from his person by the out of control irate woman. The WFM gray shirt employee did not the extend the courtesy of asking what happened, but assumed the plaintiff was at fault and instructed another WFM to call the police. The WFM gray shirted employee grabbed the arm of the plaintiff and pushed plaintiff again. The plaintiff, hurting and bleeding, was trying to locate his personal items. The assaults by the gray shirted WFM employee were continual and unwarranted as if intended to express some anger and bias toward plaintiff. Plaintiff explained he was looking for his personal belongings. Another WFM employee brought the plaintiff's hat to the plaintiff who, it seems, overheard the plaintiff asking for his belongings, but nothing else was returned. Plaintiff indicated he wanted to wear his face mask [covid-19 recommended] and asked for it, but the gray shirted employee told him he couldn't. Gray shirt employee behaved prejudicially and biased toward plaintiff. Plaintiff asked why he couldn't wear a mask when others were. Demanding a mask, another WFM employee then brought a mask for the plaintiff to wear.

15. Plaintiff's face, hand and wrists were bleeding and the open wounds were 'burning'. It was difficult for the plaintiff to remain stationary while in pain. No assistance or medical attention was provided for the plaintiff, nor was medical assistance offered or summoned even though plaintiff requested help. No in-store assistance was provided, nor was an

ambulance called. The plaintiff noticed cuts to his wrist and forearm bilaterally and to hands with redness and swelling to the plaintiff's fingers of his right hand.

16. Plaintiff had realized that WFM employee(s) had drawn the false conclusion that the plaintiff was the aggressor. The WFM gray shirt employee did not accommodate the victim plaintiff in any way. The gray shirt employee did not move the plaintiff from the aisle where the assault had occurred. As customers stared and passed, the plaintiff was being treated as the wrongdoer by the WFM employees. Some customer's, having observed the WFM employee's treatment toward plaintiff, assumed the plaintiff was the 'bad' person and made unkind remarks toward plaintiff. Plaintiff was taunted by customers whose extemporaneous comments were that the plaintiff should be ashamed of beating a woman and about fighting a woman when plaintiff had not been fighting the woman or beating the woman. The irate woman was the initial aggressor, but because she is female it was assumed the male was the aggressor and was at fault and the woman should be assumed to have been the victim. The irate woman had no injuries and no bleeding and even hollered to customers, *"Look him, look at his face, look at his face. I fu..ked him up"*. The irate woman continued her rant as she looked toward plaintiff and hollered several times over, *"Look at your face!"*. This was a clear admission that the plaintiff had suffered injuries inflicted by the woman, yet no assistance or first aid was offered to plaintiff.

17. The plaintiff had visible signs of injury. In spite of visible injuries suffered by plaintiff, WFM employees did nothing to assist or comfort the plaintiff, but, instead, offered the irate woman a chair to seat herself, brought her water and asked if she needed anything and spoke to her in a sympathetic and comforting tone of voice as though she was the victim. An egregious display of bias with an assumed conclusion.

18. As the plaintiff was forced to remain confined, customers of the store were passing the scene on their way to check-out to pay for their items. Some had asked what happened. The aggressive and irate woman again shouted several times, *"Look at his face, I fu...ked him up", just look at his face"*. Plaintiff's face had lacerations and they bled. WFM, Inc. did nothing to aid the plaintiff.

19. The aggressive out of control woman clearly exclaimed she had injured someone, however, the plaintiff's need for assistance was ignored even after he stated his lacerated face was 'burning'. This should have been sufficient to alert WFM that the plaintiff, had suffered injuries and was the victim and needed assistance.

20. In spite of the woman shouting her accomplishment of causing injury to the plaintiff, not one WFM employee offered any assistance to the plaintiff, not even a towel to cleanse the injuries sustained by the plaintiff, a chair to sit or a glass of water.

21. As the plaintiff was confined to an area, the plaintiff was grabbed and pushed by the gray shirt employee, customer's walking through the area made unsavory comments to the plaintiff, such as, *"Why would you beat a woman?"*, *"You are stronger than she is, leave her alone"*, *"Why would you beat her, have some dignity"*. All were erroneous assumptions and were taunting and harassing of the plaintiff. The WFM gray shirt employee seemed to have taken delight in hearing these harassing words and never admonished outsiders to not make comments, nor were they re-directed. The harassment of the plaintiff continued from unknown and unknowing customers appearing in the area as the gray shirt WFM employee kept striking plaintiff with pushing and holding plaintiff's arms in restraint as he repeatedly pushed plaintiff.

9

22. The WFM gray shirt employee did nothing to stop extemporaneous comments made by customers passing by, all of which were based on assumption and insulting of the plaintiff. The WFM gray shirted employee seemed to enjoy the assumptive commentary as plaintiff observed the facial gesticulations of the WFM gray shirted employee.

23. Having been ridiculed and condemned by customers, not having all personal property returned and having waited over about 35 minutes for the police to arrive who did not, plaintiff, not getting any assistance or care, decided to leave the Whole Foods Market premise and calmly walked toward the exit in an attempt to escape the constant harassment and insults by customers who had not witnessed the incident, but who assumed, erroneously, the woman was the victim and is often thought to not be the aggressor.

24. As plaintiff walked toward the exit, the WFM gray shirt employee was standing at the exit and grabbed the plaintiff roughly and stated that the plaintiff had to stay. Plaintiff backed away from the WFM gray shirt employee and exited the store. The WFM gray shirt employee followed the plaintiff and continued to assault the plaintiff by grabbing the plaintiff at the arm and pushing the plaintiff backward at least seven times while on a public sidewalk. The last assault by the WFM gray shirt employee involved this employee holding the plaintiff with force and pushing. The plaintiff instructed the WFM gray shirt employee to not touch him again or the plaintiff would press charges of assault with the New York Police Department (NYPD). The WFM gray shirt employee responded, *"You can't do that, I'm a former police officer"*. Having been harassed by this WFM gray shirt employee several times and assaulted many, many times inside the Whole Foods Market store at least seven (7) times on the public side walk, the plaintiff stated to this employee, "It's clear you are biased!" and told the WFM gray shirt employee to not ever touch him again. The

SUMMONS AND COMPLAINT filed 5/16/2022

plaintiff stated he had waited for the police who were a 'no show' and was needing to attend to his injuries which had not been addressed inside of WFM, nor had medical assistance/ambulance been summoned. The WFM gray shirt employee finally retreated and the plaintiff left the area and went to this home to address his several wounds and cleanse away the blood, apply ice and rest himself.

25. The WFM gray shirted employee and other WFM employees made determinations of fact, a function for a jury in a legal proceeding/tort. The WFM employees should have remained neutral, assisted both the aggressor and the plaintiff. The WFM had a duty to intervene in a physical altercation and not to make determinations of fact that were based on bias.

26. The WFM employees imposed subjective judgment outside of learning the facts of the matter. The plaintiff was aggrieved by the subjective conclusions made by WFM employees, was taunted while in the custody of WFM, held against his will, and assaulted by WFM.

27. The plaintiff suffered personal injury when the WFM breached a duty of care and its liability in a physical altercation that occurred on its premise.

28. The matter of this complaint is a tort- personal injury, repeated assaults by an employee of WFM and because of personal injury plaintiff seeks money damages.

29. Woman in the WFM aggressively screamed at the plaintiff and engaged an unprovoked face off with the plaintiff which was also made worse by aggressive conduct against plaintiff by WFM employee(s).

30. A bag in the middle of the aisle where customers walked should have been noticed by WFM employee who was sweeping the aisle before she engaged in extended conversation with

irate and angry woman who attacked the plaintiff after having alleged the plaintiff touched a bag that was seated in the pedestrian aisle unattended.

31. Plaintiff has made *at least* four requests to WFM via e-mail to preserve the video of this event that occurred on October 9, 2021 in the afternoon of said date. To date, WFM has been uncooperative.

32. The WFM [employees] should have been an impartial party to the event of physical altercation, but chose to act partially and abrogated its duty as a neutral party to the physical altercation, even assaulting the plaintiff several times in the store as well as on a public sidewalk as WFM employee aggressively followed the plaintiff.

33. While the plaintiff was being unnecessarily restrained by WFM employee, the irate woman repeatedly screamed vociferously at the plaintiff attempting to strike blows on the plaintiff as she reached over the WFM employee who was holding the plaintiff. It was only then that the irate woman was restrained, but who vociferously screamed, *"You want a piece of me, you want a piece of me, I'll fuck you up..."*

34. The WFM employees did little to stop the aggressive conduct of the irate woman initially as they watched the plaintiff being repeatedly attacked. The WFM employees never demonstrated any affirmative acts to assist plaintiff who was visibly injured.

35. Defendant WFM "In particular, they have a duty to control the conduct of third persons on their premises when they have the opportunity to control such persons and are reasonably aware of the need for such control" *(Cittadino v DeGironimo, 198 AD2d 801, 802, 604 NYS 2d 387, 388 [4th Dep't. 1993] citing D'Amico, 71 NY2d 76 [Ct App 1987])*. As a facility that caters to the public, the defendant WFM "...had a duty to act in a reasonable manner to control the conduct of third persons on its premises so as to prevent harm to its patrons"

12

IS AND COMPLAINT filed 5/16/2022

*Marianne 00 v. C&M Tavern Inc.*, 180 AD2d 998,999, 580 NYS2d 549, 550 [3rd Dep't. 1992]. The fact that the irate woman was clearly out of control as she continually assaulted the plaintiff and hollered vociferously and that plaintiff was not hitting back and that the plaintiff was erroneously thought to be the 'bad guy' was a reckless disregard and a culpable negligence by the defendant WFM.

36. Defendant WFM had an opportunity to control the irate woman and they were aware of the need to do so, but chose, instead, to control the plaintiff by constricting the plaintiff, who was not out of control, with a 'bear hug' constraining, pushing, aggressive grabbing by a WFM employee.

37. There are issues of fact here not limited as to whether defendant WFM acted in a reasonable manner during the October 9th, 2021 altercation and whether the defendant WFM was a substantial cause or a competent producing cause of the alleged injuries sustained by the plaintiff.

38. WFM effete effort to diffuse the irate woman who initiated the assault was evident as defendant WFM demonstrated that the need was to control the plaintiff who was trying to protect his upper body by shielding himself with his arms to protect his head and face. The irate woman was clearly out of control, not the plaintiff, "[O]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to prevent him from doing such harm" *(D'Amico, 71 NY2d 76 at 88 [Ct App 1987]; citing Restatement [second] of Torts ss319.*

39. Whether the defendant WFM reasonably secured their premises against the assault by the irate woman upon plaintiff will depend on the "nature of the risk reasonably to be apprehended as well as the burden of risk's minimization", which are "fact sensitive

13

ONS AND COMPLAINT filed 5/16/2022

variables, the quantification of which is ordinarily properly left for a jury". The defendant WFM acted unjustly as the issue finder and made issue determination without there being any properly objective investigation.

40. "The mere existence of an intervening criminal act by a third person will not completely absolve a defendant or defendant's security service from liability where such defendants should have reasonably anticipated a risk from harm from criminal activity to person's on the premises" (Gilmartin v.Helmsley-Spear, Inc., 162 AD 2d 275, 556 NYS 2d 632, 633 [1st Dep't. 1990]).

41. It has long been the rule that liability attaches if danger from a criminal act was foreseeable. "The foreseeable danger was from intentional or criminal misconduct is irrelevant; [defendant WFM] nonetheless had a duty to make a reasonable provision against it. Breach of that duty would be negligence" (Loeser v. Nathan Hale Gardens, Inc., 73 AD2d 187, 192, 425 NYS 2d 104, 108 [1st Dep't. 1980]). Surely, the 3rd, 4th and 5th and the continuation of the hits were foreseeable since defendant WFM employees and security stood by and watched as the irate woman continued to strike blow after blow after blow on the plaintiff. Therefore, defendant WFM had a duty to make reasonable provision against plaintiff being hit a 3rd, 4th and 5th time even while plaintiff was being restrained by WFM employee.

42. Triable issues of fact exist as to whether defendant WFM affirmative act of intervening by restraining plaintiff before restraining irate woman placed plaintiff in a more vulnerable position than he would have been had defendant WFM not intervened.

43. Defendant WFM's 'intervention' in an attempt to control the altercation and, because of the negligent manner in which the defendant WFM did so, defendant WFM placed the plaintiff in a more vulnerable position. "Where a person voluntarily assumes performance of a duty,

14

100516/2022 SUMMONS AND COMPLAINT filed 5/10/2022

he is required to perform it carefully, not omitting to do what an ordinarily prudent person would do in accomplishing the task" <u>(Wolf v. City of New York, 39 NY2d 568, 573 349 NE2d 858, 860, 384 NYS2d 758, 760 [Ct App 1976])</u>. [A]n 'assumed duty', or a 'duty to go forward' may arise once a person undertakes a certain course of conduct upon which another relies" <u>(Heard v. City of New York, 82 NY2d 66, 72, 623 NE2d 541, 544, 603 NYS2d 414, 417 [Ct App 1993];</u> citations omitted). "[T]he question is whether defendant's conduct placed plaintiff in a more vulnerable position than plaintiff would have been in had defendant done nothing" *(Id)*. In this case, defendant WFM observed plaintiff being struck by the irate woman continually accompanied by woman screaming and hollering. Thereafter, plaintiff was struck by the irate woman many, many times, and even more. After repeated blows to his person, the plaintiff shielded himself (upper body) with his hands and arms. As such, defendant did nothing to stop the irate woman until some patrons hollered, "Why doesn't somebody stop this". The delayed intervention by the defendant placed the plaintiff in a more vulnerable position.

44. After having been repeatedly assaulted, defendant WFM gray shirt employee grabbed and pushed the plaintiff several times, further assaulting the plaintiff. Defendant employee, after finally attempting to restrain the irate woman, attempts were not completely successful in the restraint of the irate woman because the irate woman's arms were never restrained as she continued to reach over the WFM employee and strike blows at and toward the plaintiff, hollering *"You want a piece of me?"*, *"Look at your face"*, referencing the cuts she had made to plaintiff's face. It appears that because of the effete effort to restrain the irate woman by WFM employees that the irate woman may have felt she had license to continue

to attack the plaintiff since there was no united effort to restrain her. Defendant WFM, essentially, facilitated the irate woman's out of control behavior attacks on the plaintiff.

45. Defendant failed to provide a duty of care; defendant failed to act reasonably to control the conduct of the out of control woman and, failing to do so, failed to prevent harm to the patron plaintiff.

46. Plaintiff suffered physical damages from assault, emotional stress and mental anguish, harassing insults by non-involved patrons, plaintiff and irate woman were not moved to an area where there was no exposure to public commentary and was assaulted by WFM gray shirt employee several times, even followed out of store and onto a public sidewalk where the plaintiff was aggressively assaulted by the WFM gray shirted employee several times. Plaintiff seeks $350,000.00 in monetary damages from the defendant.

Wherefore, the plaintiff seeks judgment against the defendant in the sum of $350,000.00, plus interest from October 9, 2021, costs and disbursements, together with any other relief the Court deems to be just and proper.

Dated: New York, New York
January 30, 2022

4-26-22

Dana Escoffier
523 Hudson Street #4FS
New York, NY 10014
(212) 675-3836

Notary Public, State of
Qualified in Westchester
My Commission Expires 04/

16

## VERIFICATION

STATE OF NEW YORK      )
COUNTY OF NEW YORK   ) ss:

Dana Escoffier, being duly sworn, deposes and says:

I am the plaintiff in the above titled action I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

_____
Dana Escoffier

Sworn to before me this 26th day of APRIL 2022

_____
Notary Public

LAURENCE J. DELORENZO
01DE611....
Notary ... State of New York
Qu... n Westchest..
My C... Expires ...24

17