UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANA ESCOFFIER,

                                   Plaintiff,

   -against-

WHOLE FOODS MARKET GROUP, INC.,

                                   Defendant.

22-cv-6588 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

The scene is a typical New York City grocery store: relatively narrow aisles, somewhat crowded. Dkt. 64-13 at 0:16. A man stands to the left of a woman; both are looking at some items on display. *Id.* He takes something from the shelf and puts it in his cart. *Id.* at 0:20. As he then tries to cross to her right, his cart bumps into hers. *Id.* at 0:21–0:25. It's unclear who says something first, but the conversation soon escalates as they exchange a series of increasingly aggressive hand gestures. *Id.* at 0:25–0:38. The man then steps toward the woman, and she raises her hand. *Id.* at 0:39–0:41. It's unclear whether she strikes him at that point (though the man says she did). *Compare id.*, *with* Dkt. 75 at 18–19. In any event, he grabs her hand and immediately smacks her across the face. Dkt. 64-13 at 0:42.

At that point, it's on. The woman delivers a few punches as the man tries to grab her. *Id.* at 0:42–0:45. As soon as this fight starts, the store's security guard is trying to break it up. *Id.*; *see* Dkt. 66 at 1. He successfully does so after about five seconds and those few punches. Dkt. 64-13 at 0:42–0:45. Once the fight is broken up, the guard takes the man to one side of the store while someone else stands with the woman on the other side. *See id.* at 0:45–0:53. In the process of breaking up the fight and moving the man to one side of the store, the guard appears to put one or both of his arms around the man to restrain him. *See id.* at 0:50–0:57. The man and woman briefly continue their heated exchange (now of words) from across the store. *See id.* at 0:55–1:29. The man paces from side to side while the guard stays in front of him and keeps a hand on him to keep him back. *See id.* After that, the fighters retreat fully to their respective corners of the store, not to interact again. *See id.* at 1:30–11:59.

This fight took place in a New York City Whole Foods and was captured on the store's security camera.[1] The man is Plaintiff Dana Escoffier. (The Court hasn't learned the woman's name.) Escoffier, proceeding pro se, has sued Whole Foods. He most clearly claims negligence, negligent

---

[1] Escoffier says the video has been altered. Admittedly, it seems that the footage is slightly sped up; movements appear more natural when the video is played at three-quarter speed. But that minor difference is likely a default of the security camera, and any split-second distinctions don't make or break this motion.

hiring, and discrimination, though the Court will address some other theories as well. *See* Dkt. 75 at 11–13, 34. He seeks $350,000 in damages. Dkt. 1-1 at 18. Whole Foods has moved for summary judgment. Dkt. 63.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But it "do[es] not accept Plaintiff's facts to the extent that they are 'blatantly contradicted by the record.'" *Oakley v. Dolan*, 2023 WL 3263618, at *1 (2d Cir. May 5, 2023) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). And if the non-movant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–26 (1986).

Here, Escoffier is pro se. "When a pro se litigant is involved, the same standards for summary judgment apply, but the pro se litigant should be given special latitude in responding to a summary judgment motion." *Alli v. City of New York*, 2023 WL 6393403, at *3 (S.D.N.Y. Sept. 29, 2023) (internal quotation marks omitted). So the Court reads Escoffier's summary-judgment papers "liberally and interpret[s] them to raise the strongest arguments that they suggest." *Id.* (citation omitted). Being pro se "does not, however, excuse a pro se litigant from making the showing required to defeat summary judgment; he or she must offer more than bald assertions, completely unsupported by evidence to overcome the motion." *Vasquez v. Warren*, 630 F. Supp. 3d 524, 535 (S.D.N.Y. 2022) (internal quotation marks omitted). Escoffier begins from behind in making this evidentiary showing: seemingly the only discovery conducted in this case was Whole Foods' deposition of Escoffier.

## DISCUSSION

### I.   Negligence

Though neither side addresses it, New York law applies because the incident happened in New York and both sides rely on New York law. *See Dannenfelser v. Flexi N. Am., LLC*, 2024 WL 640025, at *13 n.6 (E.D.N.Y. Feb. 15, 2024). Under New York law, negligence requires a plaintiff

---

Yet Escoffier makes a bigger claim. He says the video captures only "momentary images," completely omitting parts of the incident. Dkt. 75 at 23–24. But "[t]here is no evidence supporting the notion that Defendants purposely altered the video or that it has been manipulated" in this way. *Vasquez v. Warren*, 630 F. Supp. 3d 524, 530 n.2 (S.D.N.Y. 2022). "Indeed, Plaintiff himself relies on the videos throughout various points … when advantageous to his position[.]" *Id.* "Because I do not find that Plaintiff has submitted any evidence that the video[] ha[s] been altered or doctored, I will consider [it] as evidence for purposes of summary judgment." *Id.*; *see also id.* (collecting cases).

to show "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (internal quotation marks omitted).

Determining the existence and scope of a duty is typically a question of law. *Pink v. Rome Youth Hockey Ass'n, Inc.*, 63 N.E.3d 1148, 1150 (N.Y. 2016). "A possessor of a public establishment has no duty to protect against unforeseeable and unexpected assaults." *Wall v. Starbucks Corp.*, 179 N.Y.S.3d 739, 741–42 (2d Dep't 2022). But it does have a "duty to control the conduct of third persons on [its] premises when [it] ha[s] the opportunity to control such persons and [is] reasonably aware of the need for such control." *Pink*, 63 N.E.3d at 1150 (citation omitted). Foreseeability is "defined by past experience and the likelihood of conduct on the part of third persons which is likely to endanger the safety of the visitor." *Maheshwari v. City of New York*, 810 N.E.2d 894, 897 (N.Y. 2004).

Here, the assault on Escoffier was unforeseeable. "[B]efore the assault, the assailant had not caused any problems and … the assault happened suddenly and without warning." *Millan v. AMF Bowling Centers, Inc.*, 833 N.Y.S.2d 173, 174 (2d Dep't 2007). There was a short argument followed by a short fight, and no evidence suggests that Whole Foods employees should have anticipated the fight or responded more quickly than they did. Courts have reached the same conclusion when, as here, "[t]he record[] … [is] devoid of evidence of antecedent physical confrontations." *Johnson v. Starbucks Corp.*, 2023 WL 5671546, at \*11 (S.D.N.Y. Sept. 1, 2023); *see also id.* (collecting cases); *Scharff v. L.A. Fitness Int'l, LLC*, 30 N.Y.S.3d 574, 574 (2d Dep't 2016) (collecting cases); *cf. Y.R. ex rel. Mirian T.B. v. City of New York*, 157 N.Y.S.3d 712, 713 (1st Dep't 2022) ("Nor is there an issue of fact as to the adequacy of the school's security plan and/or whether it had been violated, given the evidence that security guards patrolled the halls and immediately intervened to stop the fight.").

Escoffier says the "loudness of the female customer's voice caught the attention of everyone on the floor.… The entire [Whole Foods] was on notice of a disruption occurring." Dkt. 75 at 39. Even if that's true, it doesn't change the analysis: the "disruption" was mere seconds before the fight, even a loud disruption does not clearly signal that a fight is about to happen, and there's no evidence that Whole Foods employees could have responded any faster than they did. Other cases have similarly found that provocations preceding a fight don't make it foreseeable. *See Millan*, 833 N.Y.S.2d at 174 (granting summary judgment for the defendant when its employees could not "reasonably have anticipated or prevented the assault of the plaintiff" even when the assailant had "laugh[ed] at him" before the attack); *Ali v. Miller's Ale House, Inc.*, 2018 WL 11457324, at \*1 (N.Y. Sup. Ct. Aug. 3, 2018) (granting summary judgment for the defendant despite the plaintiff's argument that "his verbal altercations with the [assailant] … should have been recognized by [the defendant] as a prelude to a fight").

Escoffier also seems to argue that Whole Foods was negligent in failing to "sweep debris from [the] floor." Dkt. 75 at 11. This is his story:

> [A] Black female employed by [Whole Foods], as an agent or serving as an "extension" of [Whole Foods], is depicted in time lapse video surveillance as having a duty to sweep debris from floor. This agent of [Whole Foods] approached a bag in the pathway of pedestrian traffic, stepped around the bag on the floor, engaged with the female customer in conversation, that was not brief, all while the bag remained in the aisle on the floor in line of pedestrian traffic. The agent for [Whole Foods] continued speaking with woman when plaintiff was finally able to proceed and passed-by these two females (female customer and woman sweeper) after having waited for clearance to pass as the bag caused other customers to veer into oncoming traffic in the opposite direction. When plaintiff saw an opportunity to pass by the obstruction on the floor, plaintiff proceeded pas[t] the obstructing bag on the floor. After having moved a short distance away from the [Whole Foods] agent and female customer, the female customer screamed and shouted to the plaintiff. The agent of [Whole Foods], female sweeper, walked away hurriedly, but never moved the bag that sat on the floor unattended and which remained in place causing an obstruction to pedestrian traffic. Female sweeper never asked who owned the bag or took possession of the bag to move it from aisle. As a sweeper and agent of [Whole Foods] to keep floor, as her actions demonstrated, and to keep floor free of objects/obstructions, she did not. [Whole Foods], through its agent, failed in this capacitance and was contributorily negligent; [Whole Foods'] agent did not remove obstruction, which would have been mitigating of the prevailing obstruction.

Dkt. 75 at 11–12.

The video shows none of this. It never shows the woman talking to any employee before the fight. In fact, the video shows that the woman and the bag are not alongside Escoffier until just before the confrontation. *See* Dkt. 64-13 at 0:03–0:21. Nor is the bag an "obstruction" or "debris" that should have been cleared out of his way. Though Escoffier makes it sound like a plastic grocery bag, the bag is a roller bag that the woman is using as her cart. *See id.* at 0:03. And even if there was a Whole Foods employee who was negligent in failing to move a bag out of Escoffier's path, that wouldn't be enough. That negligence might make a fall foreseeable, but not fisticuffs.

Although Escoffier focuses on negligence, his argument also hints at a battery claim. "Battery is the unjustified touching of another person, without that person's consent, with the intent to cause a bodily contact that a reasonable person would find offensive[.]" *Rivera v. State*, 142 N.E.3d 641, 644–45 (N.Y. 2019). It is Escoffier's burden to show that the contact was "wrongful under all the circumstances." *Hines v. Westchester County*, 170 N.Y.S.3d 483, 484 (2d Dep't 2022); *see also* N.Y. Prac., N.Y. Law of Torts § 1:12 (2023) ("[I]t is necessary to demonstrate that the intentional contact itself was offensive, i.e., wrong under the circumstances."); *Oakley v. MSG Networks*, 2021 WL 5180229, at *5 (S.D.N.Y. Nov. 8, 2021), *vacated and remanded on other grounds sub nom. Oakley v. Dolan*, 2023 WL 3263618.

The contact here was reasonable, so a battery claim would fail. Escoffier's battery argument is that, in breaking up the fight, the security guard "restrain[ed] [him] with a 'bear hug' … tightly." Dkt. 75 at 24. The video reveals that the security guard did seem to briefly hold Escoffier, though it would be a stretch to call it a bear hug, let alone a tight one. *See* Dkt. 64-13 at 0:50–0:57. And after that, the security guard continues to keep a hand on Escoffier to keep him away from the woman. *Id.* at 0:55–1:29. This physical contact was reasonable given that the security guard was breaking up a fight and keeping it from restarting. *See* N.Y. Prac., N.Y. Law of Torts § 1:21 ("[O]ne who voluntarily intervenes to break up a fight or other disturbance is generally immune from assault and battery claims."); *cf. Watkins v. Sears Roebuck & Co.*, 735 N.Y.S.2d 75, 75 (1st Dep't 2001) (holding that tackling a shoplifter was justified and thus not a battery).

Relatedly, Escoffier says restraining him placed him in a "more vulnerable position." Dkt. 75 at 32. He seems to be referring to the point at which the security guard was trying to get in the middle of the fight. But the guard is not restraining him at that time, and no punch was landed within that brief window. *See* Dkt. 64-13 at 0:42–0:48. So Escoffier's claim that he was "being hit a 3rd, 4th and 5th time … while [he] was being restrained by" the security guard is simply contradicted by hard evidence. Dkt. 1-1 ¶ 41.

## II.   Negligent hiring and related claims

For a claim of negligent hiring, training, supervision, or retention, Escoffier must show the elements of negligence and that "(1) the tort-feasor and the defendant were in an employee-employer relationship, (2) the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 129 (2d Cir. 2019) (citation omitted). "But the employee also must not be acting within the scope of his or her employment; for in that situation the employer would only be liable vicariously under the theory of respondeat superior, and not for negligent supervision or retention." *Id.* at 129–30 (cleaned up).

Escoffier's claim here is unclear. His argument might be based on the security guard's "bear hug," but that act was clearly within the scope of the guard's employment. *See Norwood v. Simon Prop. Grp., Inc.*, 159 N.Y.S.3d 482, 486 (2d Dep't 2021).

There is also an allegation in the complaint (which is not repeated in his summary-judgment papers) that the security guard followed Escoffier out of the store and assaulted him on the "public sidewalk." Dkt. 1-1 ¶ 18. Assuming that happened, it might well be outside the scope of the security guard's employment. But the claim still fails for at least three reasons. First, Escoffier hasn't shown that Whole Foods and the security guard were in an employee-employer relationship. There is no record on this question here, and many security guards are independent contractors rather than employees. *See Capak v. Epps*, 2020 WL 3073210, at *8 (S.D.N.Y. June 10, 2020) (collecting cases). Second, there's no evidence that Whole Foods knew or should've known that the security guard had a "propensity" for assaulting customers or anything similar. Third, the security guard used neither Whole Foods' premises nor its other property to assault Escoffier.

### III.    Discrimination

Finally, much of Escoffier's argument is that Whole Foods discriminated against him. He says that the woman called him "white" (followed by an expletive) just before she attacked him. Dkt. 75 at 38. And then after the fight, Whole Foods employees did nothing as the woman lobbed insults at him from across the store. *See* Dkt. 75 at 13, 27–29. Before even mentioning the law, there's simply a lack of connection here. The later insults had nothing to do with race. *Id.* So even if the woman made a race-related comment at some point, nothing suggests that Whole Foods took any action (or failed to take any action) based on Escoffier's race.

In any event, Escoffier's claim (whatever it might be) fails for legal reasons too. He might be invoking 42 U.S.C. § 2000a, which requires "full and equal enjoyment of the goods … of any place of public accommodation." But "place of public accommodation" is defined to include a "facility principally engaged in selling food for consumption on the premises," § 2000a(b)(2), and courts have consistently held that grocery stores don't count. *Of-Allodium v. Lantman's Mkt.*, 2021 WL 4312058, at *3 (D. Vt. Sept. 22, 2021) (collecting cases); *McArthur v. C-Town Super Mkt.*, 2022 WL 2981573, at *3 (D. Conn. July 28, 2022) (same). Escoffier has not shown that this Whole Foods principally sold food to eat there or was otherwise a place of public accommodation.

Escoffier also might be arguing that these verbal attacks were assaults. But he hasn't shown or argued that he was "in fear of imminent harmful or offensive contact." *United Nat. Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993). Nor would that argument succeed given that both he and his assailant were separated and supervised once the fight was broken up.

Finally, Escoffier might be saying that Whole Foods is liable for intentional or negligent in-fliction of emotional distress. New York's "tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). And negligent infliction of emotional distress requires "(1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021) (en banc).

The intentional-infliction claim fails. To start, Escoffier hasn't shown extreme and outrageous conduct. This element "filter[s] out petty and trivial complaints" and is "most susceptible to deter-mination as a matter of law." *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993). The conduct must be "beyond all possible bounds of decency … and utterly intolerable in a civilized community." *Id.* (citation omitted). Escoffier's allegations aren't enough. He says his assailant was gloating about beating him up to passersby, which was embarrassing and tarnished his reputation. *See, e.g.*, Dkt. 75 at 34–35. This argument fails; far more embarrassing and harmful acts have been found to fall short. *See, e.g.*, *Chanko v. Am. Broad. Cos.*, 49 N.E.3d 1171, 1178–80 (N.Y. 2016) (broadcasting final moments of hospital patient's life without his or family's consent); *Doe v. Am. Broad. Cos.*, 543 N.Y.S.2d 455, 456 (1st Dep't 1989) (broadcasting images of rape victims after

saying they would be kept anonymous); *Conklin v. Laxen*, 118 N.Y.S.3d 893, 897 (4th Dep't 2020) (ruining plaintiff's professional standing by falsely accusing her of euthanizing healthy cats).

And for both intentional and negligent infliction, Escoffier hasn't shown the requisite emotional harm. "Severe emotional distress" requires that "the distress inflicted is so severe that no reasonable man could be expected to endure it." Restatement (Second) of Torts § 46 cmt. j (1965). "The intensity and the duration of the distress are factors to be considered in determining its severity." *Id.* Here, Escoffier says he was harassed for "about thirty minutes" as he waited "for police to arrive," and then he left after they didn't show up within that time. Dkt. 75 at 41. Thirty minutes of moderate embarrassment, without more, is not enough—and that is especially clear here given that Escoffier could have left at any time but chose to stay.

Similarly, for negligent infliction, Escoffier has shown no "guarantee of the genuineness of the harm." "Often the 'index of reliability' of the mental suffering is in the form of 'contemporaneous or consequential physical harm.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 528 F. Supp. 2d 303, 310 (S.D.N.Y. 2007) (quoting *Johnson v. State*, 334 N.E.2d 590, 592 (N.Y. 1975)). In a limited set of "exceptions," plaintiffs may recover without "some objective evidence of distress suffered, because they involve special circumstances guaranteeing that the plaintiffs' distress was genuine." *Id.* at 310–11. These exceptions include family-related harms and "the plaintiff being unreasonably placed in fear of physical harm." N.Y. Prac., N.Y. Law of Torts § 6:25; *see also In re MTBE Prod. Liab. Litig.*, 528 F. Supp. 2d at 310–11. Escoffier's situation fits none of these exceptions. Nor has he shown any physical consequences of the emotional distress. So this claim also fails.

## CONCLUSION

For these reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to close Dkt. 63, enter judgment for Defendant, and close this case.

SO ORDERED.

Dated: June 13, 2024
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge